

RECEIVED
IN LAKE CHARLES, LA

AUG 3 1 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JACK SULLIVAN, ET AL | : | DOCKET NO. 03-796 |
| VS. | : | JUDGE TRIMBLE |
| PHILIP MORRIS USA INC., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the Court is "Defendant Philip Morris USA, Inc.'s Motion for Summary Judgment: Federal Preemption and La. Rev. Stat. § 51:1406" [doc. #141] wherein the mover seeks to have this Court enter summary judgment in its favor pursuant to Federal Rule Civil Procedure 56. Defendant, Philip Morris USA Inc.("Philip Morris") maintains that Plaintiffs' claims are barred under federal preemption and Plaintiff's LUTPA[1] claims are exempt from liability under Louisiana Revised Statute § 51:1406.[2]

## FACTUAL STATEMENT

In their complaint, Plaintiffs make the following allegations. Defendant, Philip Morris,

---

[1] Louisiana Unfair Trade Practices and Consumer Protection Act.

[2] La. R.S. 51:1406(4) provides the following:

The provisions of this Chapter shall not apply to:

\* \* \*

(4) Any conduct which complies with section 5(a)(1) of the Federal Trade Commission Act [15U.S.C., 45(a)(1)], as from time to time amended, any rule or regulation promulgated thereunder and any finally adjudicated court decision interpreting the provisions of said Act, rules and regulations.

marketed light cigarette brands by describing them as "lights" in the name and/or having "lowered tar and nicotine." These material representations are false because they imply that the cigarettes have lower tar and nicotine and are medically less harmful than Philip Morris' regular cigarettes. In actuality, smokers of these products do not receive lower tar and nicotine, and the light cigarettes are no safer than regular cigarettes. Plaintiffs allege that the tar from these products is higher in toxic substances and more mutagenic than the tar from regular Marlboro cigarettes and Philip Morris' other regular brands.

Plaintiffs further allege that Philip Morris, with the help of the Tobacco Institute, knowingly and falsely created an environment of disinformation through public statements, the purpose of which was to create doubt about the negative health implications of smoking. Philip Morris also marketed light brand cigarettes with the intention of communicating to consumers that these cigarettes were less harmful or safer than regular Marlboros or Philip Morris' other regular products. In other words, Philip Morris used the descriptive term "lights" to imply that such products were safer and/or less harmful than regular brands, when in fact they are not.

Plaintiffs allege that prior to and while making these representations, Philip Morris was aware that smokers adjusted their smoking behavior through subconscious means to receive the same dose of nicotine and tar from a light cigarette as from a regular cigarette. Philip Morris designed their light brand cigarettes to reduce the machine-measured tar and nicotine delivery in scientific testing, knowing that consumers would handle the cigarettes in a way to extract the same levels of tar and nicotine from light products as they would from their regular counterparts.

Philip Morris designed light cigarettes to have increased ventilation. Light cigarettes designed with this type of ventilation provide a lower machine measurement of tar and nicotine for

light cigarettes, while allowing a consumer to receive the same delivery of tar and nicotine from the light and regular cigarettes. Plaintiffs allege that Philip Morris was aware that smokers compensated subconsciously by, among other things, inhaling deeper, taking more frequent puffs, taking large puffs and holding the smoke in the lungs for a longer period of time which enables an individual smoker to regulate the amount of nicotine and enhance the tar received by the smoker. Consequently, there is no difference for an individual smoker between the tar and nicotine delivery from a Marlboro Light as compared to a regular Marlboro cigarette, and likewise between light or ultra light cigarettes and other regular cigarette products.

Plaintiffs then allege that in November 2002, Philip Morris acknowledged that consumers who smoke light cigarettes are as likely to inhale the same levels of cancer-causing toxins as those who smoke regular cigarettes. Plaintiffs further allege that is it now scientifically known that light cigarettes are actually more harmful and more hazardous than their regular counterparts, and Philip Morris has been aware of this fact at all relevant times.

Pursuant to Federal Rule of Civil Procedure 56, Philip Morris moves for summary judgment in its favor contending that Plaintiffs' claims are preempted by the Federal Cigarette Labeling Act of 1969[3] (the "Labeling Act"), and barred by the exemption provided for in Louisiana Revised Statute § 51:1406(4).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[3] 15 U.S.C. § 1334(b).

any material fact and that the moving party is entitled to judgment as a matter of law."[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

## LAW AND ANALYSIS

In July 1965, Congress enacted the Federal Cigarette Labeling and Advertising Act.[10] The 1965 Act mandated a warning on cigarette packages (§ 5(a)), but barred the requirement of such warnings in cigarette advertising (§ 5(b)).[11] Section 2 of the 1965 Act declares the statute's two

---

[4] Fed. R.Civ. P. 56(c).

[5] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[9] *Anderson*, 477 U.S. at 249-50.

[10] 15 U.S.C. §§ 1331-1340.

[11] §§ 1333-1334.

4

purposes: (1) to adequately inform the public that cigarette smoking may be hazardous to health, and (2) to protect the national economy from the burden imposed by diverse, nonuniform, and confusing cigarette labeling and advertising regulations. In furtherance of the first purpose, § 4 of the 1965 Act made it unlawful to sell or distribute any cigarettes in the United States unless the package bore a conspicuous label providing: "Caution: Cigarette Smoking May Be Hazardous to Your Health." In furtherance of the second purpose, § 5, entitled "Preemption," provided in relevant part:

> (a) No statement relating to smoking and health, other than the statement required by section 4 of the Act, shall be required on any cigarette package.
> (b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled n conformity with the provisions of this Act."[12]

Congress subsequently enacted the Public Health Cigarette Smoking Act of 1969 (the "Labeling Act"), which amended the 1965 Act to strengthen the warning label by requiring a statement that cigarette smoking "is dangerous" rather than it may be "hazardous."[13] The Labeling Act also banned cigarette advertising in any medium of electronic communication subject to FCC jurisdiction. More importantly, the Labeling Act modified the preemption provision by replacing the original § 5(b) with the following provision:

> (b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

It is undisputed that each brand of light cigarettes sold in Louisiana bore the congressionally mandated health warnings in conformity with the Labeling Act. Hence, Philip Morris argues that to

---

[12] 15 U.S.C. § 1334.

[13] 15 U.S.C. § 1333 (1969).

5

apply Louisiana law to impose an additional "requirement" or "prohibition" with respect to cigarette advertising and promotion based on smoking and health – is expressly forbidden by Congress.[14] Philip Morris also argues that Plaintiffs' claims are barred by the doctrine of implied conflict preemption because imposing state-law liability would undermine the efforts of Congress and the FTC to implement a national, uniform policy of informing the public about the health risks of smoking – including the tar and nicotine yields of different brands.

Finally, Philip Morris maintains that Plaintiffs' consumer protection claims are likewise barred by the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") itself, which exempts from liability "[a]ny conduct that complies with section 5(a)(1) of the Federal Trade Commission Act,[15] as from time to time amended, any rule or regulation promulgated thereunder and any finally adjudicated court decision interpreting the provisions of said Act, rules and regulations."[16]

The issue before this Court is whether Plaintiffs' state law claims are preempted by the Labeling Act or exempted by LUTPA. Plaintiffs plead the following state law causes of action.

(1) Plaintiffs plead redhibition pursuant to Louisiana Civil Code Article 2520, *et seq.* Plaintiffs allege that the light cigarettes were defective in failing to deliver less harmful disease causing toxins than regular cigarettes, and had Plaintiffs known of the defect, they would not have purchased them.

(2) Plaintiffs plead a breach of express and implied warranties. Plaintiffs allege that Philip

---

[14] *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521 (1992).

[15] 15 U.S.C. 45(1)(a).

[16] La. R.S. § 51:1406(4).

6

Morris introduced and marketed light cigarettes with the intent of leading Plaintiffs into believing light cigarettes were safer than their regular counterparts, thereby inducing Plaintiffs to purchase light cigarettes and to continue smoking while believing they were avoiding certain health risks.

(3) Plaintiffs plead intentional misrepresentations or suppressions of the true effect of light cigarettes. Plaintiffs maintain that Philip Morris' fraud vitiates the consent of Plaintiffs' purchase of light cigarettes entitling them to rescind the sales of all light cigarettes. Plaintiffs further plead failure of cause as to the contract of sale between Plaintiffs and the parties to the contract alleging that Philip Morris marketed light cigarettes as being safer than its regular brands and providing smokers "lowered tar and nicotine," when in fact the light cigarettes are actually more harmful and more hazardous than their regular counterparts.

(4) Plaintiffs plead violations of Louisiana's Unfair Trade Practices and Consumer Protection Act ("LUTPA")[17] because of Philip Morris' fraud and misrepresentation of the true nature of its light cigarette brands.

*Are Plaintiffs' claims expressly preempted by the Labeling Act?*

In the Labeling Act, Congress recognized that "diverse, nonuniform and confusing" cigarette labeling and advertising requirements would frustrate public health goals and excessively burden commerce and the national economy.[18] Hence, Congress prescribed the specific language of the Surgeon General's health warning that must appear on all cigarette packages and in cigarette advertising. Pursuant to the Labeling Act's two-pronged preemption provision, Congress "unequivocally preclude[d] the requirement of any additional statements on cigarette packages beyond

---

[17] La. R.S. 51:1401, *et seq.*

[18] 15 U.S.C. § 1331; *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001).

7

those required in § 1333," and further "preclude[d] States or localities from imposing any requirement or prohibition based on smoking and health with respect to the advertising or promotion of cigarettes."[19]

Philip Morris maintains that all of Plaintiffs' claims are an attempt to impose state-law requirements or prohibitions on cigarette advertising and promotion with respect to smoking and health. Furthermore, all of Plaintiffs' claims are nothing but repackaged failure-to-warn and warning neutralization claims. Thus, all of Plaintiffs' claims are preempted by the Labeling Act. Plaintiffs, on the other hand argue that the Labeling Act does not preempt state law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes, citing *Cipollone*.[20]

In *Cipollone*, the Supreme Court held that any common law failure to warn action is preempted to the extent that it relies on a state law requirement or prohibition with respect to advertising or promotion.[21] The Court also held that claims that the tobacco companies neutralized the effect of the federally mandated warnings through their advertising and promotion activities were preempted.[22] Hence, any claim grounded in whole or in part upon any alleged inadequacy of the federally mandated warnings is preempted.

The Supreme Court in *Cipollone* held the following claims were not preempted by the Labeling Act:

---

[19] *Reilly*, 533 U.S. at 542.

[20] 505 U.S. at 523.

[21] *Id.*

[22] *Id.* at 527.

8

(1) breach of express warranty – claims based on a contractual commitment voluntarily undertaken.

(2) fraudulent misrepresentation – based on the duty not to deceive.

(3) claims based exclusively on actions unrelated to advertising or promotion – claims that rely solely on testing or research practices.

(4) claims that rely on a state law duty to disclose information through channels of communication other than advertising or promotion – for example, a state law that obligated tobacco companies to disclose material facts about smoking and health to a state administrative agency.

The Supreme Court analyzed each claim using the following central inquiry; "we ask whether the legal duty that is the predicate of the common-law damages action constitutes a "requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion," . . . .[23] Each damages action is considered, assuming *arguendo* that each claim is viable.[24] The analysis must look at not what the count or allegation is called or how the question is framed in the Complaint, but whether the plaintiff, to prevail, would have to show "whether the claim would require the imposition under state law of a requirement or prohibition based on smoking and health with respect to advertising or promotion."[25] The Act does not "pre-empt petitioners' claims that rely solely on [defendant's] testing or research practices or other actions unrelated to advertising or promotion.[26]

---

[23] *Id.* at 524.

[24] *Id.*

[25] *Id.* at 525.

[26] *Id.*

9

Philip Morris argues that all of Plaintiffs' claims are undeniably based on advertising and promotion which runs afoul of the preemption provision in the Labeling Act.

*Redhibition*

Plaintiffs allege that the light cigarettes were defective in failing to deliver less harmful disease causing toxins than regular cigarettes, and had Plaintiffs known of the defect, they would not have purchased them. Plaintiffs argue that the Labeling Act does not preempt state-law obligations to avoid marketing cigarettes with manufacturing defects or to use a demonstrably safer alternative design for cigarettes. Philip Morris maintains that the complaint does not assert a design defect claim as Plaintiffs are not alleging that they suffered injuries because they smoked cigarettes that could have been designed in a safer manner. Philip Morris then asserts that Plaintiffs' redhibitory defect claim is based on the way that cigarettes were labeled.

To support its position, Philip Morris cites a recent Minnesota District Court case which concluded that all of the plaintiffs' claims were preempted by the Labeling Act.[27] In *Dahl*, the court analyzed each of Plaintiff's claims and determined that each was preempted because it would force the defendant to change its labeling. In doing so, the court stated the following:

> If, as alleged, the use of the word "Lights" in the cigarette packaging creates the "false" and "misleading" impression that leads to liability under the statute, then Reynolds' only recourse would be to modify their advertising, promotion, or labeling in some way.[28]

Philip Morris then asserts that *Dahl* is a straightforward application of the U.S. Supreme

---

[27] *Dahl v. R.J. Reynolds Tobacco Co.*, 2005 WL 1172019 (Minn.Dist.Ct. May 11, 2005).

[28] *Dahl*, 2005 WL 1172019,

10

Court's decision in *Cipollone*,[29] and makes clear the Labeling Act's preemption provision "reaches all "requirement[s] or prohibition[s]" under State law "with respect to the advertising or promotion of cigarettes.'"[30]

Plaintiffs assert that Philip Morris manipulated nicotine levels by finding a way to "trick" the testing machines so that light cigarettes would show lower tar and nicotine levels, when in fact Philip Morris knew that humans smoking the cigarettes would consume similar nicotine levels as experienced from regular cigarettes. Philip Morris ignores the fact that instead of changing its labeling, it could possibly have designed a light cigarette that would actually deliver less tar and nicotine in the hands of a consumer.

Plaintiffs cite *Wright v. Brooke Group Ltd., et al.*,[31] to support its position that post-1969 claims that the tobacco industry concealed facts are not preempted when a plaintiff alleges that the defendants "knowingly designed, manufactured and distributed a product which they knew was both carcinogenic and addictive and, thus, not fit for the ordinary purpose for which it was intended."[32]

Plaintiffs are not asking Philip Morris to change its labeling. Plaintiffs are seeking an action in redhibition because the product itself was defective. The FTC method of testing gave lower tar and nicotine measurements than what each light cigarette actually delivered to a human smoker. Hence, the product was not reasonably fit for its intended purpose – to deliver lower tar and nicotine. Because this cause of action does not impose a requirement or prohibition based on smoking and

---

[29] 505 U.S. 104 (1992).

[30] *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001).

[31] 114 F.Supp.2d 797 (N.D.Iowa 2000).

[32] *Id.* at 828.

11

health with respect to advertising or promotion, it is not preempted by the Labeling Act.

*Breach of express and implied warranties*

Plaintiffs allege that Philip Morris introduced and marketed light cigarettes with the intent of leading Plaintiffs into believing light cigarettes were safer than their regular counterparts, thereby inducing Plaintiffs to purchase light cigarettes and to continue smoking while believing they were avoiding certain health risks. Plaintiffs further assert that Philip Morris breached its express and implied warranties of fitness because light cigarettes were not fit to satisfy the particular purpose for which Plaintiffs purchased them – and for which Philip Morris marketed them. Consequently, Plaintiffs are entitled to dissolve and/or rescind all sales of Philip Morris, Inc.'s light cigarettes and receive a return of the purchase price from Philip Morris with interest from the date of purchase, and to recover damages.

Philip Morris argues that this is just another challenge to its advertising and promotion and thus, preempted by the Labeling Act. However, the Supreme Court in *Cipollone* held that "to the extent that petitioner has a viable claim for breach of express warranties made by respondents, that claim is not pre-empted by the [Labeling] Act."[33] In so finding, the Court reasoned that:

> while the general duty not to breach warranties arises under state law, the particular "requirement ... based on smoking and health ... with respect to the advertising or promotion [of] cigarettes in an express warranty claim arises from the manufacturer's statement in its advertisements. In short, a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a "requirement ... *Imposed under State law"* within the meaning of § 5(b).[34]

Therefore, this Court will also reject Philip Morris' preemption defense as to Plaintiffs' claims

---

[33] *Cipollone,* 505 U.S. at 527.

[34] *Id.* at 526.

for breach of express or implied warranties.

*Fraudulent Misrepresentations*

Plaintiffs plead intentional misrepresentations or suppressions of the true effect of light cigarettes. Plaintiffs maintain that Philip Morris' fraud vitiates the consent of Plaintiffs' purchase of light cigarettes entitling Plaintiffs to rescind the sales of all light cigarettes. Plaintiffs further plead failure of cause as to the contract of sale between Plaintiffs and the parties to the contract alleging that Philip Morris marketed light cigarettes as being safer than its regular brands and providing smokers "lowered tar and nicotine," when in fact the light cigarettes are actually more harmful and more hazardous than their regular counterparts. Plaintiffs also plead violations of Louisiana's Unfair Trade Practices and Consumer Protection Act ("LUTPA")[35] because of Philip Morris' alleged fraud and misrepresentation of the true nature of its light cigarette brands.

Philip Morris concedes, citing *Cipollone,* that some common-law fraud claims are not preempted by the Labeling Act because they are based on a general duty not to deceive, not on "smoking and health."[36]

As to theories of fraudulent misrepresentations, the *Cipollone* Court held that claims such as allegations that the defendant neutralized the effect of federally mandated warning labels were preempted by the Labeling Act. Such claims are predicated on a state-law prohibition against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking.

However, certain claims of intentional fraud and misrepresentation by "false representation

---

[35] La. R.S. 51:1401, *et seq.*

[36] *Cipollone,* 505 U.S. at 527-528.

13

of a material fact [and by] conceal[ment] of a material fact" are not preempted. In *Cipollone*, the Court held that Plaintiffs' claims of concealment of facts are not preempted to the extent that such claims:

> rely on a state-law duty to disclose such facts through channels of communication other than advertising or promotion... For, example, if state law obliged respondents to disclose material facts about smoking and health to an administration, § 5 (b) would not pre-empt a state-law claim based on a failure to fulfill that obligation.
>
> Moreover, petitioner's fraudulent-misrepresentation claims that do arise with respect to advertising and promotions (most notably claims based on allegedly false statements of material fact made in advertisements) are not pre-empted by § 5(b). Such claims are predicated not on a duty "based on smoking and health" but rather on a more general obligation the duty not to deceive.[37]

In finding that petitioner's claim based on allegedly fraudulent statements made in respondents' advertisement were not preempted by § 5(b) of the Labeling Act, the *Cipollone* Court concluded that the phrase "based on smoking and health" did not encompass the more general duty not to make fraudulent statements. As in *Cipollone*, Plaintiff's claims of fraudulent misrepresentation to the extent that they allege a false representation or concealment of a material fact are not preempted by the Labeling Act.

*Are Plaintiffs' LUTPA claims exempt under Louisiana Revised Statute 51:1406 based on conflict preemption?*

Plaintiffs allege that Philip Morris fraudulently misrepresented the true nature of its light cigarette brands in violation of Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA").[38] Philip Morris asserts that Plaintiffs' LUTPA claims are exempted by § 51:1406(4).

---

[37] *Id.* 505 U.S. at 528-529.

[38] La.R.S.51:1401, *et seq.*

14

arguing that the Act exempts from liability "[a]ny conduct that complies with section 5(a)(1) of the Federal Trade Commission Act [15 U.S.C. § 45(a)(1)], as from time to time amended, any rule or regulation promulgated thereunder and any finally adjudicated court decision interpreting the provisions of said Act, rules and regulations." Section 5(a) of the FTC Act empowers the FTC to prevent parties from "using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."[39] Hence, Philip Morris argues that because it has always complied with the FTC Act, its rules and regulations as well as the decisions of the FTC, it is exempt from liability pursuant to Louisiana Revised Statute 51:1406(4).

Plaintiffs cite *U.S. v. Philip Morris, Inc.*,[40] wherein the District Court rejected the defendant's preemption argument. The Plaintiff (the government) claimed that the Defendants knowingly *misled consumers* with advertisements that suggested that light cigarettes were less hazardous. Defendants sought summary judgment arguing that the marketing of its products was within the exclusive jurisdiction of the Federal Trade Commission. The court noted as follows:

> Even though the FTC has exclusive jurisdiction under the FTCA, the statute has never been interpreted to give the agency exclusive jurisdiction over advertising or marketing conduct. Nor has the FTC's authority to administer the FTC Act been an obstacle to suits premised on overlapping state statutes or on common law .... State prohibitions of unfair or deceptive trade practices are not preempted *unless* they conflict with an express FTC rule. . . . Indeed, the Agency has long *encouraged* use of overlapping state deceptive practices statutes because problems in the marketplace exceed the Agency's enforcement capabilities. (citations omitted, emphasis in original)

*Id.* at 78.

The Court concluded that the Plaintiff's RICO claims were not preempted by the FTC Act

---

[39] 15 U.S.C. § 45(a).

[40] 263 F.Supp.2d 72 (D.D.C. 2003).

15

or the Labeling Act. Plaintiffs argue that for the same reasons set forth in *U.S. v. Philip Morris, Inc.*, Plaintiffs' claims against Philip Morris for violations of LUTPA are not exempt.

Philip Morris cites *Buckman Co. v. Plaintiffs' Legal Committee*,[41] wherein the Supreme Court held that "state-law fraud claims conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objective."[42] In *Buckman*, plaintiffs claimed injuries resulting from the use of orthopedic bone screws in the pedicles of their spines. Plaintiffs alleged that defendant *made fraudulent representations to the Food and Drug Administration* ("FDA") in the course of obtaining approval to market the screws. Plaintiffs sought damages under state tort law. The Supreme Court held that such claims are preempted by the Federal Food, Drug and Cosmetic Act ("FDCA"), as amended by the Medical Device Amendments of 1976 ("MDA").

Neither *U.S. v. Philip Morris, Inc.*, nor *Buckman* addresses § 51:1406(4) of the LUTPA which expressly states that LUTPA does not apply to conduct if it is in compliance with § 5 of the FTCA. However, the clear language of the statute states that if a defendant has complied with § 5(a)(1)[43] of the FTCA, LUTPA does not apply. Be that as it may, to the extent that Plaintiffs are claiming that Philip Morris has violated the Louisiana Unfair Trade and Consumer Potection Law,

---

[41] 531 U.S. 341 (2001).

[42] *Id.* at 350.

[43] § 45(a)(1) provides the following:

**(a) Declaration of unlawfulness; power to prohibit unfair practices; inapplicability to foreign trade**

(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.

16

LUPTPA does not apply.

## CONCLUSION

Based on the foregoing, the motion for summary judgment filed by Defendant, Philip Morris U.S.A., Inc. will be GRANTED to the extent that all of the claims made pursuant to the Louisiana Unfair Trade & Consumer Protection Law will be dismissed, otherwise, the motion for summary judgment will be DENIED.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 31st day of August, 2005.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE